**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**NAVDEEP SINGH**

             **Plaintiff,**                     **05 Civ. 9680 (SCR)**

             v.

                                                   **MEMORANDUM**
                                                   **DECISION AND ORDER**

**GLENN S. GOORD, et al.**

             **Defendants.**

────────────────────────────────────────

**STEPHEN C. ROBINSON, United States District Judge:**

      Plaintiff Navdeep Singh, an incarcerated person who professes a belief in the Sikh faith, brings this action against various officials of the New York State Department of Correctional Services ("DOCS"), under the Religious Land Use and Incarcerated Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, the Free Exercise Clause of the First Amendment, the Article I, section 3 of the New York State Constitution, and various other constitutional provisions. Plaintiff seeks declaratory and injunctive relief as well as damages.

      This matter has been bifurcated into two phases. In the current phase, plaintiff is challenging policies and directives of DOCS, seeking injunctive and declaratory relief. This phase of the litigation does not involve individual instances of wrong doing for which plaintiff is requesting damages. The parties have cross-moved for summary judgment. For the reasons below, plaintiff's motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment is granted in part and denied in part.

**I. Introduction**

**A. Factual Background**

      Plaintiff is an inmate at Fishkill Correctional Facility ("Fishkill"), who professes a belief in the Sikh faith. Plaintiff is currently serving a five year sentence for assault in the first degree and criminal possession of a weapon.

      Plaintiff states that he was raised a devout Sikh, and remains one today. Since his arrival at Fishkill, plaintiff has made numerous requests related to the practice of his

religion. While discussed in more detail below, these demands relate generally to: possession of certain religious articles; treatment of his religious articles; wearing religious garbs; grooming standards; dietary considerations; and accommodations regarding prayer.

Because of the relatively small number of Sikh inmates housed by DOCS -- defendants state the number is fifteen – defendants did not have pre-existing guidelines regarding many of plaintiff's requests. DOCS therefore designated Captain Arlin Pelc, Captain of Security at Fishkill, to address many of plaintiff's requests. While a substantial number of his requests have been accommodated, plaintiff currently seeks additional accommodations.

**B. Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact". Fed. R. Civ. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*.

The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998)).

**II. Exhaustion of Remedies**

Defendants argue that some of plaintiff's claims should be dismissed for failure to exhaust administrative remedies. Defendants' motion on this basis is granted in part.

Under the Prison Litigation Reform Act (PLRA), no prisoner may bring a claim under § 1983 or any other federal law until administrative remedies are exhausted. 42 U.S.C. § 1997e(a). This applies to all inmates suits about prison life, including claims about general circumstances or particular incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To exhaust remedies in New York State, a prisoner must: 1) file a grievance with the Inmate Grievance Resolution Committee ("IGRC"), consisting of fellow inmates and prison officials; 2) appeal to the Superintendent of the facility; 3) appeal to the Central Office Review Committee ("CORC"). *See Foreman v. Goord*, No. 02 Civ. 7089, 2004

U.S. Dist. LEXIS 3133, *16 (S.D.N.Y. March 2, 2004).  Complete exhaustion to the highest level is required for each claim.  *Veloz v. New York*, 339 F. Supp.2d 505, 514 (S.D.N.Y. 2004).  Letter complaints to prison officials that do not follow the grievance procedure do not satisfy the exhaustion requirement.  *Scott v. Gardner*, 287 F. Supp.2d 477, 488 (S.D.N.Y. 2003).  More generally, the Supreme Court recently held that procedurally defective grievances do not satisfy the PLRA.  *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006).

## A.  Excusable Failure to Exhaust Certain Claims

Plaintiff appears to acknowledge that he has not formally exhausted administrative requirements with respect to the following claims:  i) the right to wear a *Kacchera* (a religious undergarment) at all times and to possess more than three *Kaccheras*; ii) the right to wash and dry *Kaccheras* and turbans in his cell; iii) the right to be present when his religious articles and books are searched or otherwise touched under normal circumstances; iv) the right to shower three hours before dawn.  However, plaintiff argues that his failure to exhaust administrative remedies does not preclude a judicial remedy because defendants' actions justify his failure to exhaust remedies.

The Second Circuit employs a three-part inquiry when a defendant contends that a prisoner has failed to exhaust available administrative remedies. The court must ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)(internal quotations omitted).[1]

In this case, plaintiff argues that he attempted to grieve his complaints but was told by prison officials that he was to address his concerns with Captain Arlin Pelc, captain of security at Fishkill.  Plaintiff argues that this entitles him to prevail under the *Hemphill* line of cases.  Plaintiff is incorrect.

While plaintiff argues that on July 12, 2005 he "filed a grievance entitled 'Further Concerns', plaintiff has not provided copies of this grievance.  In addition, it appears that this "grievance" was merely a letter sent to Defendant Michelle Stone, the Inmate Grievance Supervisor at Fishkill.  *See Supplemental Declaration of Yosef Rothstein*, Ex. 65. It is well-established that letters to prison officials do not excuse the failure to exhaust administrative remedies.  *See Connor v. Hurley*, No. 00 Civ. 8354, 2004 U.S. Dist LEXIS 7146, *7 (S.D.N.Y. April 26, 2004). *Scott*, 287 F. Supp.2d at 488.

---

[1] In *Woodford v. Ngo*, the Supreme Court held that prisoners must comply with procedural requirements in exhausting remedies pursuant to the PLRA.  126 S. Ct. 2378, 2382 (2006).  Defendants argue that the viability of the *Hemphill* line of cases is unclear in the post-*Woodford* world.  While it is possible to interpret *Woodford* as rendering *Hemphill* and its progeny obsolete, the Second Circuit recently applied the *Hemphill* exceptions to the exhaustion requirement in light of *Woodford*.  *See Loera Macias v. Zenk*, No. 04 Civ. 6131, 2007 U.S. App. LEXIS 17795 (2d Cir. July 26, 2007).  Taking direction from the Second Circuit, this Court will accordingly apply the *Hemphill* exceptions, applying *Woodford* where applicable.

Moreover, Ms. Stone's response clearly indicated to plaintiff that his letter was *not* being treated as a grievance.[2] Similarly, with respect to an issue regarding prayer times raised by plaintiff, Ms. Stone advised plaintiff to address his concerns to Captain Pelc, but also indicated that he may file a formal grievance if he wanted to – even going so far as to provide plaintiff an Inmate Grievance Complaint Form. *Supp. Rothstein Decl.* Ex. 66. Nowhere in Ms. Stone's responses is there any indication that plaintiff was to be precluded or pressured against filing a grievance, and plaintiff's record of filing other grievances makes plain that he was aware of such procedures.

Similarly, plaintiff's argument that DOCS set up an "idiosyncratic" grievance system for him rings hollow. While the evidence indicates that Captain Pelc was designated to deal with particular concerns raised by plaintiff, there is no indication that plaintiff was ever advised against filing a formal grievance when he felt it was appropriate – indeed plaintiff appears to have filed many formal grievances. The fact that a prisoner is advised to resolve a complaint through channels available to him other than the formal grievance system, *see* 7 N.Y.C.R.R. § 701.3(a)(advising inmates to resolve issues through formal or informal channels prior to filing a formal grievance), does not *per se* indicate either that the formal grievance procedure was not available to him, that the prisoner was prevented from filing a grievance, or that some special circumstance exists to excuse the prisoner's failure to formally grieve his complaint.

Accordingly, plaintiff has failed to exhaust remedies for the following claims: i) the right to wear a *Kacchera* at all times and to possess more than three *Kaccheras*; ii) the right to wash and dry *Kaccheras* and turbans in his cell; iii) the right to be present when his religious articles and books are searched or otherwise touched under normal circumstances; and iv) the right to shower three hours before dawn.

**B. Issues For Which Plaintiff Claims He Filed Grievances**

Plaintiff claims he has in fact exhausted his remedies on three claims: i) his right to use a reading lamp at night for prayer purposes; ii) his right to remain in continuous contact with his religious articles; and iii) his right to work assignments that do not violate his religious beliefs.

Plaintiff has not exhausted his administrative remedies with respect to use of a reading lamp. On that issue, plaintiff filed grievance #26757-5. *See Supp. Rothstein Decl.* Ex. 63. The subject of the complaint is that a corrections officer was mocking his prayer, but the grievance also complains that the room light does not go on at night and that he has already asked the facility to arrange for light at night but he has not received a response. Eventually, this grievance was appealed to the CORC, which among other things, advised that "the facility has a procedure that lights will be off at 11pm." *Id.* While plaintiff argues that this indicates that CORC had addressed the issue of lights, in context it is clear that CORC was addressing a grievance for harassment, and noting that the officer's behavior regarding lights was not harassing toward the plaintiff because it

---

[2] In contrast, where plaintiff indicated his intent to file a grievance, it was treated as such. *See Rothstein Decl.* Ex. 64.

was in accordance with the facility's policy regarding lights. Plaintiff therefore has not exhausted administrative remedies for his claim for his right to use a reading lamp at night for prayer purposes.

With respect to plaintiff's request that he remain in contact with his religious articles at all times, plaintiff filed grievance #27142-05, in which he stated, "I would like all my tenets to be with me i.e. in the way they are to be kept, on person at all times." *Supp. Rothstein Decl.* Ex. 64. Plaintiff appealed that grievance to the Superintendent, who rendered a decision on November 7, 2005. Thereafter, plaintiff had four working days until the receipt of that notice to appeal to the CORC. Plaintiff did not appeal the decision, but letters from the plaintiff indicate that he never received the Superintendent's decision, so he therefore could not appeal it. *See Hemphill*, 380 F.3d at 686 (a court must determine whether administrative remedies were actually available to the plaintiff, or if plaintiff was precluded from using the administrative grievance procedure). Since there is at least some evidence for both the proposition that plaintiff did in fact receive the decision of the Superintendent, but failed to appeal it, and for the proposition that plaintiff did not receive the decision of the Superintendent, the Court is unable to grant summary judgment in favor of defendants on this issue.

Finally, with respect to his right to refuse work assignments that violate his religious beliefs, plaintiff has failed to exhaust administrative remedies. Plaintiff does not assert that he actually filed a grievance on this issue, but rather alleges that on June 6, 2005, he was disciplined for refusing to perform a work assignment that conflicted with his religious beliefs. The Misbehavior Report of the incident indicates that plaintiff refused to perform said work due to his religious convictions. *Supp. Rothstein. Decl.* Ex. 13. Plaintiff was found guilty of refusing an order, *id.*, but that was overturned by the Commissioner. Plaintiff, citing *Giano v. Goord*, argues that because DOCS regulations state that "the individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable", 7 N.Y.C.R.R. § 701(3)(e)(1), he reasonably believed that this issue was nongrievable and therefore his failure to exhaust remedies is excusable. *See* 380 F.3d 670, 678 (2d Cir. 2004). However, *Giano* is distinguishable from the instant case for two reasons. First, unlike in *Giano*, plaintiff does not appear to assert that he subjectively misunderstood DOCS regulations and therefore believed that the grievance procedure was unavailable. *Cf. id.* (noting that plaintiff "understandably, asserts that this provision *led him to think* that he could not pursue matters relating to disciplinary proceedings through the Inmate Grievance Procedure" and that "his interpretation was hardly unreasonable"). Second, plaintiff was successful in his appeal. This separates the instant case from one where a prisoner is unsuccessful in his appeal and therefore reasonably believes that a separate grievance would be fruitless. In short, plaintiff's disciplinary was overturned. If he wants any further relief – as he apparently does in the form of a permanent adjudication on this issue – he is required to go through the normal grievance procedure.

Accordingly, plaintiff has failed to exhaust administrative remedies on i) his right to use a reading lamp; and ii) his right to work assignments that do not violate his

religious beliefs. The court is unable to grant summary judgment on plaintiff's exhaustion of remedies with respect to his right to remain in contact with his religious articles because there is a factual dispute as to whether he was notified of the Superintendent's decision on his grievance.

Having dismissed claims for which plaintiff has failed to exhaust administrative remedies, this court will now turn to the substance of the remaining claims.

### III. RLUIPA Claims

### A. RLUIPA Generally

Under RLUIPA, no government may impose a substantial burden on the religious exercise of a prisoner, even if it results from a rule of general applicability, unless the government demonstrates that the burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 § U.S.C. 2000cc-1.

Thus, plaintiff must first show that defendants substantially burdened his sincerely-held religious beliefs. The relevant inquiry on summary judgment is whether there is a material fact as to whether the policy or practice in question places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996); *see also Thomas v. Review Board of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)(same). While "mere inconvenience to the [adherent] is insufficient" to establish a substantial burden, *Westchester Day School v. Village of* Mamaroneck, 379 F. Supp.2d 550, 557 (S.D.N.Y. 2005), demonstrating a substantial burden is not an onerous task for the plaintiff. *Fifth Ave. Presbyterian Church v. City of New York*, No. 01 Civ. 11493, 2004 U.S. Dist. LEXIS 22185, *9 (S.D.N.Y. Oct. 28, 2004). In addition, the Court notes that although the substantial burden test pre-supposes that some infringements will be *de minimis*, *see Ford v. McGinnis,* 352 F.3d 582, 593 (2d Cir. 2003), the centrality of a practice to a religion is not subject to judicial inquiry. *Id.* at 590; *see also Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.") Accordingly, this Court does not accept defendants' occasional invitation to judge the centrality of plaintiff's religious practices to his faith. Instead, the Court's "scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590 (citing *Jolly*, 76 F.3d at 476).

Second, RLUIPA requires that where a policy or practice substantially burdens a religious practice of an incarcerated person, the policy must be the least restrictive means of achieving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). However, Congress, in enacting RLUIPA, anticipated that Courts would give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline,

6

consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005)(noting that RLUIPA is to be applied in an "appropriately balanced way, with particular sensitivity to security concerns".); *see also Hovenaar v. Lazaroff*, 422 F.3d 366, 371 (6th Cir. 2005)(reversing injunctive relief because "the district court failed to give proper deference to prison officials".); *Abdul-Malik v. Goord*, No. 96 Civ. 1021, 1997 U.S. Dist. LEXIS 2047, *16 (S.D.N.Y. Feb. 26, 1997)(in free exercise claims under the Religious Freedom Restoration Act, predecessor to RLUIPA, "courts are expected to continue their practice of according due deference to prison authorities in matters of prison administration."). Nevertheless, prison officials cannot simply use the words "security" and "safety", and expect that their conduct will be permissible. *Jolly*, 76 F.3d at 479 (prison policy not insulated from scrutiny "merely because defendants brandish the concepts of public health and safety").

### B. Sincerely Held Belief

There is no serious factual dispute over the sincerity of plaintiff's religious beliefs. The undisputed evidence indicates that: 1) plaintiff was born a Sikh, was raised as a Sikh, and regularly attended Sikh services growing up; 2) plaintiff consistently expressed his belief in Sikhism since he was first incarcerated; and that 3) plaintiff has engaged in hunger strikes in protest of the denial of religious exercise, and has continued to adhere to the teachings of his religion, despite being punished for doing so. *See, e.g., Plaintiff's Statement of Undisputed* Facts, ¶¶ 1-5, 7, 135-36; *Defendants' Response to Plaintiff's Statement of Undisputed Facts*, ¶¶ 1-5, 7, 135-36.

Nevertheless, defendants argue that the sincerity of plaintiff's beliefs is not appropriate for resolution on summary judgment. Defendants' argument is without merit. Plaintiff states that he is a practicing Sikh, *Decl. of Navdeep Singh* ¶ 2, and has put forth substantial evidence indicating the sincerity of his beliefs. Defendants respond only with speculation that plaintiff's beliefs may not be sincere, and could instead be "partly" motivated by his resistance to the prison environment. *Def. Opp. Mem.* at 4. However, defendants put forth no factual basis for this speculation and it is therefore insufficient to defeat plaintiff's motion for summary judgment. *See Morris*, 196 F.3d at 109 (non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'"). In addition, while defendants rely on *Ford v. McGinnis* for the proposition that courts are "singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs", the Second Circuit in that case accepted the district court's holding on summary judgment regarding the sincerity of plaintiff's religious beliefs. 352 F.3d at 588 ("For purposes of summary judgment, we must accept the district court's finding that [plaintiff] sincerely believes that celebration of the Eid ul Fitr - including the Eid ul Fitr prayer and the Eid ul Fitr feast - is critical to his observance as a practicing Muslim.")(internal quotations omitted). While this Court is conscious of the difficulty of assessing the sincerity of an individual's religious beliefs, nothing in *Ford*

abrogates the traditional requirement on summary judgment that the non-moving party actually present evidence putting a fact in dispute.[3]

## C. Individual Practices

### 1. *Kara*

The *Kara* is a steel bracelet worn by Sikhs. Plaintiff states, and defendants do not dispute, that he believes that he is required to wear the *Kara* at all times. Plaintiff is currently allowed to wear the *Kara* for only 30 minutes at a time during meals. Given that plaintiff has stated that he sincerely believes he is required to wear the *Kara* at all times, the Court holds that the limitation of allowing him to only wear the *Kara* for 30 minutes at a time during meals is a substantial burden on plaintiff's religious exercise in that it puts "pressure on [plaintiff] to modify his behavior and to violate his beliefs." *Jolly*, 76 F.3d at 477.

Defendants argue that, based on the experience of prison officials, the *Kara* is a security risk because it can be fashioned into various types of weapons including a stabbing device. *Declaration of Lucien Leclaire* ¶ 10. Nevertheless, Captain Pelc, the captain of security at Fishkill with approximately 22 years of security experience, testified that the *Kara* poses no more of a security risk than a metal crucifix, which is allowed by the prison, nor various other metal objects (e.g. nail clippers, safety-pins, etc.) which are allowed by the facility. *See Rothstein Decl*. Ex. 53 at 67-68.

Thus, despite the deference afforded to prison officials on security issues, there is a factual dispute regarding the security risk posed by the *Kara* because different prison officials have given different opinions about the security risk posed by the *Kara*. Because of this factual dispute, defendants have not established a compelling governmental interest for the purposes of summary judgment. *See Church of Lukimi v. City of Hialeah*, 508 U.S. 520, 546-47 (1993)(when the government "fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest given in justification of the restriction is not compelling."); *Fifth Ave. Presbyterian Church*, 2004 U.S. Dist. LEXIS 22185 at *39 ("[A] law cannot be regarded as protecting an interest 'of the highest order'. . . when it leaves appreciable damage to that supposedly vital interest unprohibited."). Accordingly, the parties' motions for summary judgment on plaintiff's right to possess the *Kara* at all times is denied.

---

[3] Defendants also question the sincerity of plaintiff's beliefs by arguing that some of plaintiff's religious practices would be difficult to maintain even outside the prison context. Of course, many religious beliefs and practices are difficult to adhere to. The Court does not believe that this makes adherents any more or less likely to be sincere in their beliefs. Nor have defendants provided any factual basis to conclude that the difficulty in adhering to plaintiff's religious practices indicates that he is less sincere in such beliefs.

### 2. *Kanga*

The *Kanga* is a Sikh religious comb. Plaintiff states that he is allowed to possess only one *Kanga*, but that he needs to be allowed to possess a second one so that in case the first one breaks he would have a replacement. Plaintiff also states that he is not allowed to wear his *Kanga* during outside transports.[4]

With respect to possessing a second *Kanga*, while defendants state that plaintiff's religion only requires possession of a single *Kanga*, defendants acknowledge that plaintiff sincerely believes that he is required to possess a second *Kanga*. *Defendants Response to Plaintiff's Statement of Undisputed Facts* ¶ 28. Accordingly, limiting plaintiff to a single *Kanga* places a substantial burden on his religious beliefs in that it requires plaintiff to modify his behavior and to violate his beliefs.

Defendants acknowledge that they have no objection to plaintiff carrying a second *Kanga* provided that it meets DOCS's other requirements. Accordingly, defendants have failed to identify a compelling governmental interest in limiting plaintiff to a single *Kanga*.[5]

With respect to wearing the *Kanga* on outside transports, DOCS Deputy Commissioner Lucien Leclaire indicated significant security risks associated with allowing personal belongings on outside transports. *Leclaire Decl.* ¶ 41. The Court places significant weight on the experience of corrections officials in maintaining security. However, plaintiff has indicated, and defendants do not dispute, that he is currently allowed to wear his *Kanga* on outside transports.[6] DOCS's current policy of allowing plaintiff to carry a *Kanga* on outside transports raises a factual question of whether allowing the *Kanga* on outside transports presents a security risk. Summary judgment on plaintiff's request to wear his *Kanga* on outside transports is therefore denied.

Accordingly, because defendants have not demonstrated a compelling interest in limiting plaintiff to a single *Kanga*, summary judgment is granted in favor of plaintiff. However, because there is a factual dispute regarding whether there is a security interest in preventing plaintiff from wearing a *Kanga* on outside transports, summary judgment on this issue is denied.

---

[4] Plaintiff also complains that he is required to hand over the *Kanga* for visual inspection, but this is addressed more generally below. *See* III.C.4.

[5] The Court does not agree that DOCS's current position allowing plaintiff to possess a second *Kanga* moots this issue because defendants have not demonstrated that "there is no reasonable expectation that the alleged violation will recur." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574 (2d Cir. 2003); *Allstate Ins. Co. v. Serio*, No. 97 Civ. 670, 97 Civ. 23, 2003 U.S. Dist. LEXIS 13541, *11 (S.D.N.Y. May 7, 2003). To hold that plaintiff's current claim is moot simply because defendants state that they no longer oppose plaintiff's request would allow defendants to avoid litigation freely by simply changing a policy at the time of litigation, and reverting back when the case was dismissed for mootness. Such a scenario is particularly troublesome where the plaintiff is a prisoner with limited freedoms and access to the courts or other checks on the authority of prison officials.

[6] As with the case of the second *Kanga*, the Court does not believe that DOCS's current policy of allowing plaintiff to wear his *Kanga* on outside transports moots this issue.

### 3. Turban

Plaintiff states that he sincerely believes that he is forbidden from cutting his hair, and that he is required to cover his hair using a turban, which is required to be tied in certain traditional ways. Further, plaintiff sincerely believes that he is required remain in contact with his turban at all times, including while he showers, and that he is required to wash and change his turban daily. Finally, plaintiff believes that his turban should not be touched by persons who consume intoxicants, and therefore he cannot send out his turbans with the regular laundry.[7]

Defendants do not dispute that plaintiff is currently prohibited from possessing cloth to cover his head greater than 30 inches by 36 inches, but nine feet[8] is required to tie a turban in one of the traditional ways. *See generally*, *Plaintiff's Statement of Undisputed Facts* ¶ 55-60; *Defendants' Response to Plaintiff's Statement of Undisputed Facts*, ¶ 55-60. Given that plaintiff would be unable to tie his turban in one of the traditional ways, in a manner sufficient to cover his head using a cloth that is merely 30 inches by 36 inches[9], this Court holds that plaintiff has established that this policy substantially burdens his religious beliefs. In addition, given that plaintiff is required to shower with his turban, and to wash his turban everyday, this court holds that the limitation of two turbans is a substantial burden on plaintiff's religious practice.

Defendants argue that having multiple turbans, each nine feet long, poses various security risks, including the ability to use the cloth to scale a wall or fence, difficulty in searching such turbans, and the possibility that such a long turban might touch the floor during a search, causing a concern for those for whom the turban has religious meaning. *Lucien Decl.* ¶ 19. Nevertheless, security officials from DOCS testified that there was no obvious security risk in allowing plaintiff to wear a turban made of nine-foot cloth given that prisoners are allowed to possess bed sheets and scarves, and other religious items larger than the 30 inches by 36 inches allowed the plaintiff (e.g. a "tallit" that is 5 ½ feet by 5 ½ feet). *See Rothstein Decl.* Ex. 53 at 105-07; Ex. 55 at 111. There is therefore a factual dispute regarding the security risk posed by the size of plaintiff's turbans.

---

[7] Plaintiff no longer seeks turbans of a particular color, and that claim in his complaint is hereby dismissed. However, the Court disagrees with the defendants' suggestion that this willingness to accept certain restrictions indicates that his other beliefs are not being substantially burdened.

[8] Plaintiff's declaration seeks a turban of nine feet, while defendants believe he seeks one of three meters. The Court finds this difference negligible and will address the length based on that sought by the plaintiff.

[9] The Court does not except defendants' position that the use of tissue to supplement the 30 inch by 36 inch cloth is sufficient because plaintiff himself testified, and defendants' have not disputed, that this method of tying his turban is not one of the traditional methods that plaintiff believes is prescribed by his beliefs. Nor does the Court believe that plaintiff's statement at deposition that "there's no prescribed method of tying a turban", *Rothstein Decl.* Ex. 56 at 83, indicates that the burden here is *de minimis* because plaintiff went on to state that the turban needs to be tied in a "certain fashion" and that his current practice of using tissue to supplement cloth does not comply with his religious beliefs. *See id.* at 83-84. In context, it is clear that plaintiff was testifying that he does not believe that there was a *single* way to tie his turban, that certain methods are prescribed, and that his current solution did not comply with such prescriptions.

In addition, DOCS's security concerns regarding the number of turbans plaintiff may possess appear to only relate to the tying of the turbans to scale a wall or fence. Since there is a factual dispute regarding whether a security risk is posed by the longer turbans, this court is unable to determine as a factual matter whether multiple smaller turbans pose the same security risk (or lack thereof) as the larger turbans. This is further evidenced by the deposition testimony indicating that security officials at Fishkill were unaware of any limitation on the number of scarves – which can also be tied together – that may be possessed by prisoners. *See Rothstein Decl.* Ex. 53 at 108.

Finally, the parties acknowledge that plaintiff is not allowed to wear his turban on outside transports. *Defendants' Response to Plaintiff's Statement of Undisputed Facts* ¶ 71. Because plaintiff sincerely believes he is required to wear his turban at all times, the Court holds that plaintiff has demonstrated a substantial burden on his religious exercise. Defendants, in response, identify no compelling interest in preventing plaintiff from wearing a turban on outside transports, other than a general assertion that "small" personal items may pose a security risk because of the possibility of being used to manipulate locks. *Leclaire Decl.* ¶ 41. Moreover, DOCS policy allows for wearing other religious headwear, but simply does not state that turbans are allowed on outside transports. *Leclaire Decl.* Ex. F at 3. Given that defendants have not identified any specific security risk associated with allowing plaintiff to wear a turban, and that DOCS policy itself allows other types of headwear on outside transports, this Court holds that defendants have failed to demonstrate a compelling interest in preventing plaintiff from wearing a turban on outside transports. The Court therefore grants summary judgment to plaintiff on this issue.

Accordingly, because there are factual disputes regarding the security risks posed by plaintiff's request for a greater number of turbans, and to be allowed to possess longer turbans, the parties' motions for summary judgment on this issue is denied. However, because defendants have failed to demonstrate a compelling interest in preventing plaintiff from wearing a turban on outside transports, summary judgment is granted in favor of plaintiff on that issue.

### 4. Remaining In Contact With Religious Articles and Visual Inspections

Plaintiff seeks to remain in contact with his religious articles at all times, including during searches and transfers. As stated already, the Court is unable to dismiss this claim on summary judgment for failure of plaintiff to exhaust administrative remedies because there is a factual question as to whether plaintiff was notified of the decision of the superintendent with regards to his grievance. Related to this, plaintiff further seeks to allow only visual inspections of his religious articles (e.g. his *Kanga*, *Kacchera* and Scriptures).

Defendants argue that allowing the plaintiff to remain in contact with all his religious articles during searches and transfers would create a security risk if any weapons were stored in such items. In addition, allowing plaintiff to remain in contact with his items during such a search might lead to an inadequate search. *Leclaire Decl.* ¶

11

34.  Nevertheless, material factual disputes exist with regards to whether these security concerns are justified.  First, DOCS Directive 4910 allows only for visual inspection of Native American medicine bags by corrections officers.  Under that policy, if a Native American inmate is not present, the medicine bag may only be opened by the Chaplain, or by corrections officers in exigent circumstances.  *See Supp. Rothstein Decl.* Ex. 60.  Second, there is a factual question as to whether a visual inspection is adequate with respect to some of plaintiff's articles.  For example, Captain Pelc and Deputy Commissioner Leclaire testified that, at least with respect to the *Kanga*, visual inspections might suffice.  *Rothstein Decl.* Ex. 53 at 93; Ex. 55 at 104.

Accordingly, because there are factual disputes regarding the security concerns raised by visual inspection of plaintiff's religious articles (thereby preventing forbidden persons from touching them), summary judgment is inappropriate.

### 5. *Khanda*

The *Khanda* is a Sikh religious pendant worn around the neck consisting of a straight sword, surrounded by two curved swords.  The pendant may consist of a solid piece, or as three dangling pieces.  Plaintiff states that he has not been allowed to wear a *Khanda. Decl. of Navdeep Singh* ¶ 47.  Defendants deny this, stating that he is allowed to wear a solid *Khanda* but is forbidden from wearing three dangling pieces.

Although plaintiff testified that wearing a *Khanda* is not a requirement of the Sikh faith, *Rothstein Decl.* Ex. 56 at 80, the court recognizes the importance that religious pendants may serve in expressing and reminding adherents of their faith.  Thus, to the extent that DOCS forbids plaintiff from wearing a *Khanda*, this would be a substantial burden on plaintiff's religious exercise.  Plaintiff states that he is forbidden from wearing a *Khanda. See Navdeep Decl.* ¶ 47.  Defendants state that plaintiff would be allowed to wear a medallion consisting of a solid piece rather than three dangling pieces, provided that the pendant conformed with other DOCS requirements regarding religious pendants.  *See Leclaire Decl.* ¶ 25  Given that plaintiff has not indicated that three dangling pieces, as opposed to a solid pendant, is requirement of his faith – or even that he believes that it is important to his beliefs, it is possible that restricting plaintiff to a solid medallion would not be a substantial burden on plaintiff's religious exercise.  However, because plaintiff states that he is forbidden from wearing *any Khanda*, while defendants state that he is allowed to wear the solid medallion, there is a factual dispute which precludes the Court from granting summary judgment on this issue.

In addition, the Court is unable to decide on summary judgment, whether the ban on the *Khanda*, or on the three-dangling piece variant of the *Khanda*, is the least restrictive means of achieving a compelling state interest.  First, there is conflicting testimony from prison officials regarding the security risk posed by the *Khanda.*  While defendants point to declarations by prison officials stating that the *Khanda* poses a risk, *Leclaire Decl.* ¶ 24, Captain Pelc testified that the *Khanda* poses no greater security risk than a cross, which is allowed.  *Rothstein Decl.* Ex. 53 at 129-31.  There is therefore a factual dispute regarding the security risk posed by the *Khanda*.  Second, the Court is

12

unable to determine whether the DOCS policy is the least restrictive means of achieving a compelling interest because, as stated already, it is unclear what the policy is.

Accordingly the parties' motions for summary judgment on the plaintiff's request to wear a *Khanda* is denied.

### 6. Scriptures

Plaintiff believes that 1) his Scriptures must be stored in a clean elevated location; 2) the Scriptures must be treated with respect; 3) anyone touching the Scriptures must have their head covered (preferably with a turban), must have clean hands, and must not consume intoxicants; and 4) his Scriptures should not be stored with other personal belongings, especially undergarments and shoes. *Navdeep Decl.* ¶ 41.

As discussed already, there are material facts in dispute regarding the security risks posed by visual inspection of plaintiff's scriptures. Summary judgment on that issue is therefore inappropriate.

With regard to the separate packing and storage of Scriptures during transport, defendants acknowledge that Corrections Officers are allowed to, and in the past have, packed his Scriptures with other belongings such as shoes and undergarments. *See Defendants' Response to Plaintiff's Statement of Undisputed Facts* ¶ 80. Because plaintiff believes that such packing is not in accordance with his religious beliefs, the Court holds that plaintiff has adequately demonstrated a substantial burden on his religious practice. In response, defendants identify no compelling state interest in not packing plaintiff's scriptures separately[10], and prison officials testified that such packing would pose no security risk, and that DOCS directives could be re-written to require separate packing of Sikh Scriptures. *Rothstein Decl.* Ex. 53 at 167-68; Ex. 54 at 139. Because the undisputed facts show a substantial burden on plaintiff's religious exercise, and defendants identify no compelling interest in their practice, summary judgment is appropriate.

With regards to the storage of plaintiff's Scriptures in a clean, elevated location, plaintiff was previously issued tickets for placing his mattress on the floor in an attempt to accommodate his religious beliefs by placing his scriptures on the bed frame above him. Because plaintiff was punished in attempt to abide by his religious beliefs, plaintiff has sufficiently demonstrated a substantial burden on his religious exercise.

Defendants state that they have no objection to plaintiff storing his scriptures as he sees fit, provided that furniture and space allow. Defendants do state, however, that they cannot guarantee that plaintiff's housing assignment could accommodate elevated storage of the Scriptures because not all housing units have shelves or furniture necessary

---

[10] Defendants do state that plaintiff has not demonstrated a burden because plaintiff only complains of a single incident when his Scriptures were damaged. Nevertheless, plaintiff's request is not moot because defendants have not demonstrated that there is no reasonable expectation that the alleged violation will recur.

13

to store the Scriptures.  Defendants further state that they cannot limit plaintiff's housing assignment to units which do have such fixtures or furniture available.  *See Leclaire Decl.* ¶35.  However, defendants present no factual basis for their assertion that they cannot limit plaintiff's housing assignments.  In addition, Captain Pelc testified that plaintiff's requests could be accommodated, possibly by using suction cups and hooks to sustain a net in which to store the Scriptures.  *Rothstein Decl.* Ex. 53 at 167.  Captain Pelc also noted that "there's always a way" to accommodate such requests.  Therefore, because there is a factual question regarding the ability of the defendants to accommodate plaintiff's requests, including limiting his housing assignment, or providing him some other means to keep his Scriptures elevated, summary judgment on this issue is inappropriate.

Accordingly, summary judgment is denied with respect to plaintiff's requests to have visual inspection of his Scriptures, and on the issue of accommodating plaintiff's request to keep his Scriptures in a clean and elevated place.  Summary judgment is granted in favor of plaintiff on plaintiff's request to pack his Scriptures separate from the rest of his belongings during transport.

### 7. Prayer

Plaintiff believes that he is required to pray out loud three times a day, including three hours before dawn.  Plaintiff further believes that he is required to bathe prior to praying.  Finally, plaintiff states that he has been required to pray merely by ambient light from the hallway because he has not been provided with a reading lamp.

Although plaintiff has been required to pray quietly since his incarceration, plaintiff has provided no basis to conclude that quiet prayer as a result of being in a communal environment is a substantial burden on plaintiff's religious practice.  Summary judgment on this issue is therefore appropriate.

In addition, defendants state, and plaintiff acknowledges, that DOCS policy allows plaintiff to pray whenever he wants, provided that such prayer times do not interfere with facility operations.  Accordingly, plaintiff has not demonstrated a substantial burden on his religious exercise a result of a lack of a "designated" prayer time in that plaintiff has not demonstrated "substantial pressure…to modify his behavior and to violate his beliefs."  *Jolly*, 76 F.3d at 477.  Summary judgment in favor of defendants on this issue is therefore appropriate.

Finally, as stated already, plaintiff has not exhausted his administrative remedies with respect to DOCS providing him access to a reading lamp for his prayer, or his ability to shower in the morning before prayer.  These claims are therefore dismissed.

Accordingly, the Court grants summary judgment in favor of defendants with respect to plaintiff's request to be allowed to pray out loud, to have a designated prayer time, to shower in the morning prior to prayer, and to have access to a reading light for prayer.

**8. Sikh Diet**

It is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples." *Ford*, 352 F.3d at 597. Plaintiff seeks to maintain a diet without any meat, poultry, fish, eggs, or gelatin. In addition plaintiff cannot eat prepared foods which were not prepared by a *Amritdhari* Sikh (plaintiff is an *Amritdhari* Sikh). Defendants do not dispute that plaintiff seeks to maintain such a diet in pursuant to his religious beliefs. *Defendants Response to Plaintiff's Statement of Undisputed Facts* ¶ 98-99.

In this case, plaintiff has not demonstrated a substantial burden on his religious exercise. The parties agree that vegetarian meals are available to inmates. While these meals occasionally contain eggs, plaintiff acknowledges that he was able to identify which products contained eggs. *See Plaintiff's Statement of Undisputed Facts* ¶ 102. Plaintiff has failed to demonstrate why requiring him to exercise some caution in picking from this menu places a substantial burden on his religious practice. Accordingly, defendants' motion for summary judgment on plaintiff's dietary requests is granted.

**9. DOCS Directive 4914 - Grooming Standards**

DOCS Directive 4914 governs inmate grooming standards. Directive 4914 has haircut and shave requirements for all prisoners when they are initially incarcerated. While the policy provides for an exemption from the initial haircut requirement for inmates with sincere religious beliefs that prohibit them from cutting their hair, it does not provide an exemption from the shave requirement for inmates with sincere religious beliefs that prohibit them from shaving.

Defendants move for summary judgment on plaintiff's claim for an exemption to DOCS grooming rules regarding the length of his beard. The parties agree that plaintiff is not currently required to shave his beard or cut his hair, nor was he ever required to do so.[11] Because there does not appear to be any case or controversy regarding this claim, it is hereby dismissed.

In addition, Plaintiff moves for summary judgment on his claim that DOCS's Grooming Policy, Directive 4914, violates that Free Exercise Clause. "[F]ree exercise claims of prisoners are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Orafan v. Goord*, 411 F. Supp. 2d 153, 161 (S.D.N.Y. 2006). Policies and practices which serve legitimate penological interests do not offend the Free Exercise clause. *See Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006). In this case, plaintiff's motion for summary judgment fails because numerous courts have held that Directive 4914's initial shave requirement serves a legitimate penological interest in maintaining prison security and a

---

[11] Because the Directive 4914 does not provide for exemptions from the initial shave requirement, plaintiff was disciplined for refusing to shave his beard. However these tickets were reversed on appeal. *See Navdeep Decl.* ¶¶ 5-8.

15

record of prisoners' appearances in case of escape.  *See, e.g.*, *Young v. Goord*, No. 01 Civ. 626, 2005 U.S. Dist. LEXIS 3641, *6 (S.D.N.Y. March 10, 2005); *Solomon v. Chin,* 96 Civ. 2619, 1998 U.S. Dist. LEXIS 12307, *12 (S.D.N.Y. August 10, 1998); *Ross v. Coughlin*, 669 F. Supp. 1235, 1240-41 (S.D.N.Y. 1987); *Phillips v. Coughlin*, 586 F. Supp. 1281 (S.D.N.Y. 1984).  Accordingly, plaintiff's motion for summary judgment is denied and summary judgment is granted in favor of defendants on this issue.  *See Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir. 1983)(summary judgment may be granted to non-moving party where no genuine issues of material fact are shown); *Hadar v. Concordia Yacht Builders*, 886 F. Supp. 1082, 1102 (S.D.N.Y. 1995)(same); *Siderius, Inc. v. M.V. "Ida Prima"*, 613 F. Supp. 916, 923 (S.D.N.Y. 1985)(same).

Accordingly, summary judgment is granted in favor of defendants on plaintiff's claim for an exemption under the DOCS Directive 4914 shave requirement.  In addition, summary judgment is granted in favor of defendants on plaintiff's claim for declaratory judgment that DOCS Directive 4914 violates the Free Exercise Clause.

### 10. Security Photograph

DOCS keeps two photographs of plaintiff which he objects to.  The first, which is for the identification card which plaintiff is required to keep with him, is a picture of plaintiff with a beard, but not wearing a turban.  According to defendants, DOCS policy mandates identification cards to contain photographs without head coverings that might obscure facial features.  The second photograph is a digitally enhanced version of the first, that portrays plaintiff without a beard.  The purpose of this photograph is to allow for identification in that event that an inmate escapes and changes his appearance.  This latter photograph is kept on file with DOCS.  Because plaintiff is required to keep his hair and facial hair uncut, and to wear a turban, plaintiff considers these photographs "indecent", and religiously "humiliating" and "insulting".  *Navdeep Decl.* ¶¶ 53, 56.  Nevertheless, given that plaintiff is allowed to wear a turban and keep his hair and facial hair uncut, plaintiff has failed to demonstrate that these photographs place "substantial pressure [on him] to modify his behavior and to violate his beliefs."  *Jolly*, 76 F.3d 477.  Accordingly, because plaintiff has failed to demonstrate a substantial burden on his religious exercise, this claim is dismissed.

### 11. DOCS Directive 4202

DOCS Directive 4202 covers religious programs and practices.  The directive established policies with respect to religious articles, head coverings, pendants, and texts related to the practice of various religions.  The Directive does not address the Sikh faith given the relatively low number of Sikhs incarcerated to date.  Plaintiff seeks declaratory judgment that Directive 4202 should be amended to cover the Sikh faith and its practices, so that his rights will be protected in the event that he is transferred to another facility.

Defendants move for summary judgment on the basis that the courts are ill-equipped to re-write prison policies, and that such a task is "peculiarly within the

16

province of the legislative and executive branches of government." *Turner v. Safely*, 482 U.S. 78, 84-85 (1987). While this court grants deference to the executive and legislative branches with respect to the administration of prisons, plaintiff's papers clarify that plaintiff is not seeking to have the Court re-write Directive 4202, merely a declaration that plaintiff had the right to have Directive 4202, or specific provisions thereof, re-written. In this case, because it is possible that, after trial, some aspects of DOCS policies will be found to have run afoul of RLUIPA or the First Amendment, the Court is disinclined to dismiss outright plaintiff's claim for declaratory judgment that DOCS policies need to be re-written. Defendants' motion for summary judgment on this claim is therefore denied.

### IV. Free Exercise Claims

The complaint alleges violations of the Free Exercise Clause of the First Amendment, based on the same factual averments as plaintiff's RLUIPA claims.

Unlike plaintiff's RLUIPA claims, "free exercise claims of prisoners are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. On a constitutionally-based free exercise claim, the Court must assess '(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Orafan*, 411 F. Supp.2d at 161 (internal citations omitted); *see also Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988).

While security interests are legitimate penological interests, where there exists a factual dispute regarding such security risks precluding summary judgment on plaintiff's RLUIPA claims, summary judgment on plaintiff's free exercise claims is also inappropriate. Accordingly, summary judgment is denied on plaintiff's free exercise claims on: 1) plaintiff's right to possess the *Kara* at all times; 2) plaintiff's right to wear his *Kanga* on outside transports; 3) the length of plaintiff's turbans; 4) the number of turbans plaintiff may possess; 4) plaintiff's right to remain in contact with his religious articles at all times, including during searches and transfers and his right to visual inspection of his religious articles; 5) plaintiff's right to wear a *Khanda*; and 6) plaintiff's right to storage of his scriptures in a clean, elevated location.

Where summary judgment in favor of plaintiff is appropriate on plaintiff's RLUIPA claims because defendants fail to assert any interest in the challenged policy, summary judgment is appropriate because defendants have also failed to assert a legitimate penological interest in the challenged policy. Accordingly, summary judgment on plaintiff's free exercise claims is granted in favor of plaintiff with respect to: 1) limiting plaintiff to a single *Kanga*; 2) plaintiff's right to wear a turban on outside transports; 3) plaintiff's right to separate packing and storage of his Scriptures.

With regards to plaintiff's remaining claims, the court notes that the Second Circuit has indicated that, with regards to Free Exercise claims, "[a] prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75.[12] Therefore, where summary judgment on plaintiff's RLUIPA claims was granted in favor of defendants because plaintiff failed to identify a substantial burden on religious exercise, summary judgment in favor of defendants is appropriate on plaintiff's Free Exercise claims as well. Accordingly, summary judgment on plaintiff's free exercise claims is granted in favor of defendants with respect to: 1) plaintiff's right to pray out loud; 2) plaintiff's right to a designated prayer time; 3) plaintiff's right to a Sikh diet; 4) plaintiff's claims with respect to the DOCS security photographs.

## V. New York State Constitutional Claims

Defendants move for summary judgment on plaintiff's claims for injunctive and declaratory relief under Article I, section 3 of the New York Constitution, guaranteeing free exercise of religion. It is well established that "federal courts lack jurisdiction to enjoin state officers from violating state law." *Lown v. Salvation Army*, Inc., 393 F. Supp.2d 223, 237 n.10 (S.D.N.Y. 2005); *See also Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106 (1984); *Bad Frog Brewery v. New York State Liquor Auth.*, 134 F.3d 87, 93 (2d Cir. 1998). Because plaintiff does not seek injunctive or declaratory relief against the defendants in their individual capacities, plaintiff's claims for injunctive and declaratory relief under the New York State Constitution are dismissed.

## VI. Conclusion

For the reasons stated above, plaintiff's motion for summary judgment is granted in part and denied in part. In addition, defendants' motion for summary judgment is granted in part and denied in part.

Summary judgment is granted in favor of defendants on plaintiff's RLUIPA and Free Exercise Claims with respect to the following claims: 1) plaintiff's right to wear a *Kacchera* at all times and to possess more than three *Kaccheras*; 2) plaintiff's right to wash and dry *Kaccheras* and turbans in his cell; 3) plaintiff's right to be present when his religious articles and books are searched or otherwise touched under normal circumstances; 4) plaintiff's right to shower three hours before dawn prior to prayer; 5) plaintiff's right to use a reading lamp; 6) plaintiff's right to work assignments that do not violate his religious beliefs; 7) plaintiff's right to be allowed to pray out loud; 8)

---

[12] The Second Circuit had previously declined to reach the question of whether a claim under the free exercise clause, as opposed to RLUIPA, requires a substantial burden on religious exercise. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004). In *Salahuddin*, the Circuit indicated that a substantial burden was indeed required, but also indicated that it was not addressing the plaintiff's argument that a substantial burden was not required. 467 F.3d at 274-74, 275 n.5 (noting that plaintiff is required to show substantial burden on free exercise, after which defendants need only show a legitimate penological objective in justifying the impinging conduct). Taking direction from the Circuit, this Court holds that a substantial burden on free exercise is required for a plaintiff to make out a claim under the free exercise clause.

plaintiff's right to have a designated prayer time; 9) plaintiff's right to be provided with a Sikh diet; 10) plaintiff's request for an exemption from the DOCS shave requirement; 11) plaintiff's right to DOCS security photographs that comport with plaintiff's religious beliefs; and 12) plaintiff's right to wear turbans that are orange, black, or blue. Summary judgment is also granted in favor of defendants on plaintiff's claim for a declaration that DOCS Directive 4914 violates the Free Exercise Clause. Summary judgment is also granted in favor of defendants on plaintiff's claims for declaratory and injunctive relief on plaintiff's New York state law claims.

Summary judgment is granted in favor of plaintiff with respect to the following claims: 1) DOCS policy of limiting plaintiff to a single *Kanga*; 2) plaintiff's right to wear a turban on outside transports; and 3) plaintiff's right to have his scriptures packed separately from the rest of his belongings during transport.

Summary judgment is denied with respect to the following claims: 1) plaintiff's right to remain in contact with his religious articles at all times and to visual inspections of his religious articles; 2) plaintiff's right to possess the *Kara* at all times; 3) plaintiff's right to wear a *Kanga* on outside transports; 4) plaintiff's right to wear a turban nine feet in length; 5) DOCS policy of limiting the number of turbans plaintiff may possess; 6) plaintiff's right to wear a *Khanda*; 7) plaintiff's right to keep his Scriptures in a clean and elevated place.

*It is so ordered.*

Dated: White Plains, New York
          _____, 2007                        Stephen C. Robinson, U.S.D.J.