UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAVDEEP SINGH,

                **Plaintiff,**

      *- against -*                        05 Civ. 9680 (SCR) (LMS)

GLENN S. GOORD, et al.,                  **REPORT & RECOMMENDATION**

                **Defendants.**

TO:    THE HONORABLE STEPHEN C. ROBINSON,
         UNITED STATES DISTRICT JUDGE

Plaintiff Navdeep Singh (herein, "Plaintiff"), brings the above captioned civil rights action against Defendants William Mazzuca (herein, "Defendant Mazzuca"), Paul Annetts (herein, "Defendant Annetts"), Wohlrab (herein, "Defendant Wohlrab"), Commia (herein, "Defendant Commia"), Lynch (herein, "Defendant Lynch"), Stewart (herein, "Defendant Stewart"), Tabor (herein, "Defendant Tabor"), Michelle Stone (herein, "Defendant Stone"), Officer John Doe #2 (herein, "Defendant #2), John Doe #6 (herein, "Defendant #6"), Brian Fisher (herein, "Defendant Fisher"), and William Connolly (herein, "Defendant Connolly"), and asserts various violations of his constitutional rights under the Religious Land Use and Institutionalized Person Act (herein, "RLUIPA"), 42 U.S.C. §2000c *et seq*, 42 U.S.C. §1983, and the 1st, 8th, and 14th Amendments to the Constitution. See generally Plaintiff's Complaint (herein, "Pl.'s Compl.).  In addition, Plaintiff asserts a pendent state law claim.  Id.  Plaintiff seeks both injunctive and declaratory relief, as well as monetary damages.  Id.  Familiarity with the facts and procedural history of this case is presumed.  See Judge Robinson's Memorandum Decision and Order, Oct. 9, 2007, Docket #55.  The only development of note is Plaintiff's release from

1

prison on April 17, 2009.  Defendants' Supplemental Memorandum of Law (herein "Defts.' Supp. Mem."), p. 2.

B.	Defendants' Motion for Summary Judgment

Defendants initially filed a motion for partial summary judgment prior to Plaintiff's conditional release from prison.  Defendants' Motion for Partial Summary Judgment (herein, "Defts.' Mot."), Docket #70.  At my suggestion, Defendants have since filed a supplemental memorandum of law to discuss the impact of Plaintiff's release on his remaining claims.  Defendants' Supplemental Memorandum of Law In Support of Motion for Partial Summary Judgment (herein, "Defts.' Supp. Mem."), Docket #104.  In Defendants' supplemental memorandum, Defendants argue that because Plaintiff is no longer incarcerated, Count 1, which solely seeks declaratory relief, should be dismissed in its entirety as moot, and that the aspects of Counts 2, 3, and 4 that seek injunctive relief should also be dismissed as moot.  See generally Defts.' Supp. Mem.

Turning to the Defendants' primary motion for partial summary judgment, Defendants first argue that Plaintiff has failed to exhaust his administrative remedies.  Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment (herein, "Defts.' Mem."), pp. 3-10.  Defendants also argue that money damages for violations of RLUIPA are barred by the 11th Amendment.  Id., pp. 10-11.  In addition, Defendants argue that they are entitled to qualified immunity on the claims involving the behavior reports, and that there was not a constitutional injury.  Id., pp. 12-15.  Fourth, Defendants argue that the claims against the Defendants who remain unnamed and unserved, including Defendant Commia, Defendant #2, and Defendant #6, should be dismissed from this action.  Id., pp. 15-16.  Fifth, regarding the

claim against Defendant Stewart for damage to Plaintiff's Karrah, Defendants argue that Plaintiff has failed to put forth sufficient evidence to maintain the claim. Id., pp. 16-17. Sixth, Defendants assert that the claims against Defendants Annetts and Mazzuca should be dismissed from this action because Plaintiff has failed to allege that they had any personal involvement in the alleged deprivation of rights. Id., p. 17. Seventh, as Defendant Stone has been sued only in her official capacity, any claim for money damages against her should be dismissed as barred by the 11th Amendment. Id., pp. 20-21. Last, Defendants assert that Plaintiff has failed to proffer anything aside from conclusory allegations that Defendants retaliated against Plaintiff for exercising his religion. Id., p. 22. As such, any claims of retaliation should be dismissed. Id.

C. Plaintiff's Opposition

In response to Defendants' supplemental motion for summary judgment, Plaintiff argues that he should be excepted from the mootness doctrine, and that his claims for declaratory and injunctive relief should be maintained. See generally Plaintiff's Supplemental Opposition (herein, "Pl.'s Supp. Opp."). Specifically, Plaintiff asserts that his requests to amend DOCS Directive 4202 to cover Sikh practices "are assertions of his intention to represent other incarcerated Sikhs in a representative capacity." Pl.'s Supp. Opp., p. 4. While Plaintiff is no longer incarcerated, other incarcerated Sikhs still maintain an interest in Plaintiff's requests for declaratory and injunctive relief, and therefore Plaintiff's claims for declaratory and injunctive relief are not moot and should not be dismissed as such. Pl.'s Supp. Opp., pp. 4-5.

In addition, in opposition to Defendants' motion for partial summary judgment, Plaintiff asserts that the State of New York waived its sovereign immunity protection under the 11th Amendment by accepting federal funds following the enactment of RLUIPA, and therefore

individual and official capacity damages are available for violations of RLUIPA.  Plaintiff's Opposition (herein, "Pl.'s Opp."), pp. 2-11.  Plaintiff also argues that with regard to the claim against Defendant Stewart for damage to Plaintiff's Karrah, there are sufficient issues of material fact that the claim should not be dismissed.  Id., pp. 11-15.  Third, Plaintiff argues that Defendant Wohlrab is not entitled to qualified immunity.  Id., pp. 15-20.  Last, Plaintiff counters Defendants' assertions that Plaintiff did not exhaust his administrative remedies with regard to Plaintiff's claim against Defendant Lynch for violations of his 8th Amendment rights.  Id., pp. 20-23.

## DISCUSSION

A.   Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).  A fact is "material" when it may affect the outcome of a case under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.  Id. at 250.  The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact.  Id.

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

B.  Injunctive and Declaratory Relief Claims

In the interest of judicial efficiency, I will begin by addressing whether Plaintiff's claims for declaratory and injunctive relief have been mooted as a result of Plaintiff's release from prison.

The United States Constitution, Article III, Section 2, clause 1, limits federal jurisdiction to cases and controversies. U.S. Const., art. III, §2, cl. 1. In order to maintain jurisdiction over a particular case or controversy, parties to a suit must be able to demonstrate "a legally cognizable

5

interest in the outcome" of the case or controversy. Muhammad v. City of New York Dept. Of Corrections, 126 F.3d 119, 122-23 (2d Cir.1997). In other words, "litigants are required to demonstrate a personal stake...in the outcome of their case." Cook v. Colgate University, 992 F.2d 17, 19 (2d Cir.1993) (citing United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395 (1980)) (internal quotation marks omitted). If a party cannot demonstrate such a personal interest in the case, the case is rendered moot. Muhammad, 126 F.3d at 122-23. The determination of whether such an interest exists is to be made at the initiation of litigation, but is also meant to "ensure[] that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." Id. A case that begins as ripe may become moot during the pendency of the litigation, stripping the court of its jurisdiction and rendering the court without power to "redress the injury." Id.

An exception to the "mootness doctrine" exists in cases where the particular circumstances which give rise to the injury are "capable of repetition, yet evading review." However, this exception is to be reserved for exceptional circumstances. Muhammad, 126 F.3d at 123. These exceptional circumstances generally only exist in instances of class actions. Id. If the case does not involve a class action, the "capable of repetition, yet evading review" standard is met only if "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Cook, 992 F.2d at 19 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)) (internal quotation marks omitted).

In this case, Plaintiff is not entitled to the benefit of the mootness doctrine. First, Plaintiff's action is not pled as, nor is it argued to be, a class action. Second, Plaintiff concedes

that there is not a reasonable expectation that Plaintiff will find himself in jail again such that he would be subject to the same allegedly discriminatory conduct.  Pl.'s Supp. Opp., p. 1.  Rather, Plaintiff attempts to argue that the second prong of the "capable of repetition, yet evading review" test - that the same complaining party would be subjected to the same action again - is satisfied because Plaintiff brought this action in a representative capacity on behalf of all incarcerated Sikhs.  Id.  Therefore, the "same complaining party", *i.e.*, still-incarcerated Sikhs, could be subjected to the same discriminatory conduct again.  Id.  To support this contention, Plaintiff points to the portion of his complaint that requests that DOCS Directive 4202 be amended to cover Sikh religious practices as evidence of his intent to bring this suit on behalf of all incarcerated Sikhs.  Pl.'s Supp. Opp., p. 7.  However, Your Honor previously determined that Plaintiff sought the amendment of Directive 4202 to protect his own interests should he be transferred to another correctional facility.  Decision and Order, p. 16, Docket #55.  Your Honor did not find that Plaintiff sought such an amendment to protect the rights of similarly situated Sikhs.

Moreover, Plaintiff's complaint is completely devoid of any facts or allegations that would allow this Court to conclude that Plaintiff intended to bring this cause of action on behalf of all incarcerated Sikhs.  Plaintiff did not file for class certification, nor did his complaint request relief for himself and others similarly situated.  On the contrary, Plaintiff's complaint refers solely to himself and his individual right to observe his religious practices.  See generally Pl.'s Compl.  Furthermore, under Plaintiff's prayer for relief, Plaintiff discusses amending DOCS Directive 4202 so that DOCS personnel will be prohibited from "restricting Navdeep's religious practices", "denying Navdeep the right to have six turbans", "denying Navdeep the

7

right to wear turbans", "denying Navdeep the right to possess more than three Kaccheras", and so on.  Pl.'s Compl., p. 30.  Plaintiff does not once refer to other incarcerated Sikhs.

Plaintiff's reliance on Trachtman v. Anker, 563 F.3d 512 (2d Cir.1977), Kempner v. Town of Greenwich, No. 06-CV-1393, 2007 WL 2154178 (D. Conn. 2007), and Brandon v. Bd. of Educ., 635 F.2d 971 (2d Cir.1980), is misplaced.  In Trachtman, the Second Circuit found that the plaintiff brought his suit in a representative capacity because the plaintiff's complaint specifically requested relief on behalf of himself and others similarly situated.  Trachtman, 563 F.2d at 514 n. 1.  Likewise, in Brandon, the Second Circuit again held that plaintiff's case had not become moot as a result of the plaintiff's graduation because the plaintiffs' complaint sought relief on behalf of themselves and other similarly situated students.  Brandon, 635 F.2d at 973.  The plaintiff in Kempner filed a motion to certify a class action in state court before the case was removed to federal court, evincing the plaintiff's intent to act in a representative capacity.  Kempner, 2007 WL 2154178, at*3 n. 2.

Plaintiff has failed to establish the second prong of the "capable of repetition, yet evading review" exception to the mootness doctrine: that there is a reasonable expectation that the same complaining party would be subject to the same discriminatory conduct again.  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that because Plaintiff is no longer incarcerated, and cannot establish that he is exempt from the mootness doctrine, all claims for declaratory and injunctive relief should be dismissed as moot.

C.    Plaintiff's Claims for Monetary Damages

As a preliminary matter, Defendants correctly point out that Plaintiff does not oppose their motion for partial summary judgment as to the claims against Defendant Annetts,

8

Defendant John Doe #2, Defendant Lynch for writing a misbehavior report, Defendant Mazzuca, Defendant Stone, Count 4's cause of action for First Amendment retaliation, Defendant Commia, and Defendant John Doe #6.  Defendants' Reply Memorandum of Law, p. 1-2.  As such, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has abandoned these claims and that they should be dismissed.  See Lipton v. County of Orange, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004).

    1.    Eighth Amendment Claim

Plaintiff claims that Defendant Lynch used excessive force against him on June 6, 2005.  Pl.'s Compl., ¶124.  Defendants argue that Plaintiff has failed to exhaust his administrative remedies with regard to this claim as none of Plaintiff's grievances against Defendant Lynch refer to an instance of excessive force or a physical assault of any kind.  Defts.' Mem., p. 4.  Plaintiff counters that the information contained in the June 21, 2005, grievance was sufficient to put the prison officials on notice of his claim against Defendant Lynch.  Pl.'s Opp., p. 20-22.  Accordingly, Plaintiff asserts that he has exhausted his administrative remedies for this claim and it should not be dismissed.[1]  Id.

The only grievance filed by Plaintiff that can be construed as pertaining to the alleged conduct by Defendant Lynch is the grievance filed on June 21, 2005.[2]  Marden Decl., Ex. 3, Bates 2-10-06 104-105.  This grievance contains various allegations against Defendant Lynch including forcing Plaintiff to work in areas where he should not work due to a medical condition,

---

[1] Defendants also assert that Plaintiff's grievance regarding Defendant Lynch and his claim of excessive force was neither timely filed nor fully appealed.  Defts.' Mem., p. 6-7.  Because this claim can be resolved based on the substance of the grievance, I will not address these additional grounds.

[2] Plaintiff concedes that this is the only relevant grievance.  Pl.'s Opp., p. 20.

9

preventing Plaintiff from seeing his visitors, and speaking to Plaintiff in a derogatory manner. Id. As Plaintiff points out in his opposition, at the end of the grievance, Plaintiff states that "there is a whole lot more that if I discussed, let alone put on paper, I would be jepardizing[sic] my safty[sic] here at fishkill[sic]." Id. It is this language which Plaintiff relies on as putting DOCS personnel on notice that Defendant Lynch had physically assaulted Plaintiff, thereby exhausting Plaintiff's administrative remedies and preserving the claim for this Court. Pl.'s Opp., p. 22-23.

The Court is willing to accept that the above-mentioned language indicates that Plaintiff fears that he may be physically retaliated against for filing these complaints. The Court is, of course, sensitive to Plaintiff's concerns. However, Plaintiff blurs a line that warrants distinguishing. There is a significant difference between being fearful of physical retaliation as a result of filing grievances, as compared to providing notice that the Plaintiff has previously been physically assaulted. Plaintiff states that he is afraid to detail the alleged misconduct he has experienced because he fears that he will be retaliated against in the future. Plaintiff does not say that he is afraid for his physical safety because of some prior instance of excessive force. On the contrary, it is possible that Plaintiff fears he will be physically harmed for making any grievance, alleging any sort of misconduct, against any prison official. The fact that Plaintiff fears he will be physically harmed if he reports misconduct in no way provides notice that he was, in fact, physically assaulted.

While Plaintiff is correct that "uncounselled inmates cannot be expected to satisfy a standard more stringent than that of a notice pleading" Pl.'s Opp., p. 23 (quoting Boddie v. Bradley, 129 Fed.Appx. 658, 660 (2d Cir.2005)) (internal quotation marks omitted), they still

must satisfy the requirements of notice pleading. This means that the grievance "must contain allegations sufficient to alert the Defendants to the nature of the claim." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir.2004) (quoting Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir.2004)) (internal quotation marks omitted). In other words, prisoners "must provide enough information about the conduct of which they complain to allow prison officials to take responsive measures." Id.

Plaintiff's grievance does not meet this standard. Plaintiff's grievance does not contain any mention of excessive force by Defendant Lynch on June 6, 2005, or any other allegation that would in any way indicate to DOCS personnel that they should investigate a claim of physical assault or excessive force by Defendant Lynch against Plaintiff. But see Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002) (complaint satisfied notice pleading standard in employment discrimination case because complaint "detailed events leading to termination, provided relevant dates, and included ages and nationalities… of relevant persons involved with [plaintiff's] termination"). Furthermore, Plaintiff did not mention a claim of excessive force by Defendant Lynch when interviewed by prison officials for the other claims contained within his June 21, 2005, grievance.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff did not adequately exhaust his administrative remedies with regard to his claim of excessive force against Defendant Lynch and that claim should be dismissed.

    2.    Religious Land Use and Institutionalized Person Act Claims

The Religious Land Use and Institutionalized Person Act prohibits the government from burdening a prisoner's freedom to exercise his or her religion unless the government can

demonstrate that the burden is in furtherance of a compelling governmental interest and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc-1(a). The primary issue in this case, and one of some contention across jurisdictions, is whether Congress intended to include money damages as an available remedy under RLUIPA. See Pugh v. Goord, 571 F.Supp.2d 477, 506 (S.D.N.Y. 2008) (listing cases discussing the dispute over the availability of money damages under RLUIPA).

      a.    Individual Capacity

RLUIPA was enacted by Congress pursuant to their authority under the Spending Clause of the Constitution. Pugh, 571 F.Supp.2d at 506 (citing Smith v. Allen, 502 F.3d 1255, 1274 (11th Cir.2007)). Through RLUIPA, Congress conditioned the receipt of federal funds on prisons' compliance with RLUIPA's provisions. Id.; 42 U.S.C. §2000cc-1(a). As previously mentioned, courts across the country are divided on whether money damages may be imposed on individuals who violate RLUIPA's dictates. Neither the Supreme Court, nor the Second Circuit have rendered decisions clarifying the issue. However, three district courts within the Second Circuit have rendered decisions on this issue and have unanimously held that money damages are unavailable under RLUIPA. Pugh, 571 F.Supp.2d 477; El Badrawi v. Dept. of Homeland Security, 579 F.Supp.2d 249 (D. Conn. 2008); Bock v. Gold, No. 05-CV-151, 2008 WL 345890 (D. Vt. Feb. 7, 2008). In Pugh, Judge Sullivan adopted the 11th Circuit's finding that because prison officials, in their individual capacities, were not "contracting" parties who themselves received federal funds, they could not be held individually liable for money damages for violating RLUIPA. Pugh, 571 F.Supp.2d at 506 (citing Smith, 502 F.3d at 1275. Prison officials, in their individual capacities, did not have the authority to accept or reject federal

funds.  To nevertheless hold the prison workers individually liable for violations of RLUIPA and impose money damages would "raise[] substantial constitutional concerns and would be incongruent with the reach of Congress' spending power."  Pugh, 571 F.Supp.2d at 506 (quoting Smith, 502 F.3d at 1275) (internal quotation marks omitted).  As such, Judge Sullivan concluded that the "appropriate relief" remedy provided by RLUIPA did not allow for money damages against prison officials sued in their individual capacities.  This Court is likewise persuaded by the analysis in Smith, adopted in Pugh, and concludes, and respectfully recommends that Your Honor should conclude, that all claims for money damages against Defendants in their individual capacities under RLUIPA should be dismissed.

        b.      <u>Official Capacity</u>

Jurisdictions are likewise divided as to whether prison officials sued in their official capacity may have money damages imposed on them for violations of RLUIPA.  Pugh, 571 F.Supp.2d at 507.  To impose money damages on individuals sued in their official capacity, a court must find that the subject state has waived its sovereign immunity under the 11th Amendment through its acceptance of federal funds.  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985).  The Supreme Court has previously held that a state's sovereign immunity will only be waived when "(1) Congress evince[s] a clear and unequivocal intent to hold the States liable in federal court; and then (2) a state voluntarily engage[s] in that particular activity."  Pugh, 571 F.Supp.2d at 509.  Specifically, in cases involving the imposition of money damages, the waiver of sovereign immunity must be unambiguous.  Id. (citing Lane v. Pena, 518 U.S. 187, 192 (1996)).

In Pugh, Judge Sullivan held that the remedy section of RLUIPA that refers to "appropriate relief against a government" did not satisfy the "unequivocal textual expression necessary to waive [s]tate immunity from suits for damages." Pugh, 571 F.Supp.2d at 508-509 (citing Madison v. Commonwealth of Virginia, 474 F.3d 118, 122-23 (4th Cir.2006)).  Most notably, RLUIPA is devoid of any language, such as "compensatory", or other damages language that would put a state on notice that by accepting federal funds, it is absolutely waiving its sovereign immunity.  Pugh, 571 F.Supp.2d at 509.  The term "appropriate relief" is simply too ambiguous to encompass money damages and trigger the waiver of sovereign immunity.  Id.

Likewise, in El Badrawi v. Dept. of Homeland Security, Judge Hall discussed the high standard that must be met in order overcome a state's sovereign immunity.  El Badrawi, 579 F.Supp.2d at 259 ("[t]he Supreme Court has held that Congress may only abrogate the states' sovereign immunity by making its intention unmistakably clear in the language of the statute.") (quoting Atascadero State Hosp., 473 U.S. at 242) (internal quotation marks omitted).  As in Pugh, the court in El Badrawi focused on the fact that RLUIPA was enacted under the Spending Clause, and therefore it was incumbent upon the courts to "ensure that Congress ha[d] unambiguously spelled out the conditions that attach[ed] to the receipt of federal funds."  Id. (citing Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy, 548 U.S. 291, 295-96 (2006)).  Ultimately, the Court in El Badrawi concluded that because the phrase "appropriate relief" was open to several different interpretations, it could not be said that Congress' intent was unambiguous such that a waiver of the state's sovereign immunity was appropriate.  Id. at 260-261.

Similarly, in Bock v. Gold, the District Court in Vermont adopted Magistrate Judge Niedermeier's recommendation to dismiss the plaintiff's RLUIPA claims because there was not a legal basis for a money damages claim under RLUIPA. Bock, 2008 WL 345890, at *1. In holding that RLUIPA did not provide money damages, Judge Niedermeier also relied on the fact that the language "appropriate relief" was not a clear and unambiguous expression of Congress' intent to make money damages available under RLUIPA. Id. at *6.

Plaintiff mistakenly relies on Hankins to support his contention that RLUIPA does provide money damages. Pl.'s Opp., p. 4. In Hankins, Magistrate Judge Lowe recommended, and Judge Scullin adopted, that plaintiff's RLUIPA claim be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Hankins v. NYS Dept. Of Correctional Serv., No. 07CV408, 2008 WL 2019655, at *6 (N.D.N.Y. March 10, 2008); Order Adopting Report and Recommendation, May 6, 2008, Docket #17. Judge Lowe's report and recommendation stated that if Judge Scullin disagreed with this conclusion, the plaintiff's RLUIPA claims should not be dismissed because of the unavailability of money damages. Id. at *7. Judge Lowe stated that by accepting federal funds after the passage of RLUIPA, New York effectively waived its sovereign immunity. Id. Judge Lowe did not discuss either the origins of RLUIPA, or the constitutional implications of such a holding. More importantly, Judge Lowe did not base his ultimate recommendation upon the issue of whether RLUIPA provides for money damages. Rather, Judge Lowe's discussion of the money damages issue was more appropriately considered dicta. Furthermore, Judge Scullin, in adopting Judge Lowe's recommendation, did not specifically refer to any of Judge Lowe's findings or reasonings. Therefore, this Court is more persuaded by the rulings in Pugh, El

Badrawi, and Bock and finds that RLUIPA did not explicitly and unambiguously condition the receipt of federal funds on waiving a state's sovereign immunity.

As such, I conclude, and respectfully recommend that Your Honor should conclude, that RLUIPA does not provide money damages against prison officials sued in their official capacity, and therefore, all claims against Defendants in their official capacity for money damages for alleged violations of RLUIPA should be dismissed.[3]

    3.        <u>Damage to Plaintiff's Karrah</u>

As a preliminary matter, Plaintiff's current allegations regarding damage to his Karrah occurring in August of 2005 should be dismissed. Plaintiff's complaint does not contain any allegation of damage to Plaintiff's Karrah in August of 2005. Pl.'s Compl., ¶64-72. The first mention of any damage occurring in August of 2005 is contained in Plaintiff's opposition to Defendants' motion for summary judgment. Pl.'s Opp., p. 12; Singh's Decl. In Opp., ¶40-41. As Defendants correctly point out, claims raised for the first time in opposition to summary judgement motions are improperly pled. <u>Jones v. Goord</u>, 435 F.Supp.2d 221, 261 (S.D.N.Y. 2006). Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim of damage to his Karrah occurring in August of 2005 should be dismissed.

Next, Defendants argue that Plaintiff's claims that Defendant Stewart damaged his Karrah in April and July of 2005 should be dismissed for lack of sufficient evidence. Defts.' Mem. Of Law, p. 16. Plaintiff proffers that he has put forth sufficient evidence to create a fact

---

[3] Because I so conclude, and because Plaintiff's RLUIPA claim was the only remaining claim against Defendant Wolhrab, I conclude, and recommend that Your Honor should conclude, that there are no remaining claims against Defendant Wolhrab. Therefore, assuming that Your Honor agrees with this recommendation, analysis of Defendants' argument that Defendant Wolhrab is entitled to qualified immunity would be rendered moot.

question for a jury. Pl.'s Mem. Of Law, p. 12-15. The allegations that Plaintiff's Karrah was burned are somewhat inconsistent. In Plaintiff's complaint, he alleges that DOCS personnel burned his Karrah in April of 2005. However, Plaintiff's Declaration does not contain any allegations regarding a burning of his Karrah. Nor does Plaintiff's 56.1 Statement contain any allegations regarding a corrections officer burning Plaintiff's Karrah. See generally Plaintiff's 56.1 Statement. Plaintiff makes a vague reference to his Karrah being burnt in his memorandum of law in opposition, without specifying who he believes burned the Karrah or when the alleged burning occurred. Pl.'s Mem., p. 12. Ultimately, there is no evidence in the record which would be sufficient, if believed, to support Plaintiff's claims that his Karrah was damaged in April of 2005, that his Karrah was ever burned, or that Defendant Stewart burned or otherwise damaged Plaintiff's Karrah in April of 2005. Therefore, I conclude, and respectfully recommend that Your Honor should conclude that all claims against Defendant Stewart based on a burning of Plaintiff's Karrah or any damage caused to Plaintiff's Karrah in April of 2005 should be dismissed.

There is likewise insufficient evidence to maintain Plaintiff's claim that Defendant Stewart damaged Plaintiff's Karrah in July of 2005. The grievance filed by Plaintiff regarding the events of July 10, 2005, discusses two officers, one of them presumably being Defendant Stewart, failing to provide Plaintiff an envelope in which to place his Karrah, as requested. However, there are no allegations within this grievance that either of the officers bent or damaged Plaintiff's Karrah in any way. See Marden's Decl., Ex. 4, Bates 2-10-06 334. Furthermore, the case history and record from grievance 7-13-05 states that it was only when Plaintiff's Karrah was brought to him before breakfast, on July 11, 2005, that it was bent out of

17

shape. Marden's Decl., Ex. 5, Bates 2-10-06 351. Plaintiff references a conversation that he had with the officer who brought him the bent Karrah that morning and refers to "she", indicating that the officer returning the damaged Karrah was female. Id. Defendant Stewart is a male, and thus he could not have been the delivering officer. Later on in that same record, the Plaintiff's appeal to CORC states that Officer "Stewart w[as] never accused of damaging [Plaintiff's] Karrah." 2-10-06 352. Again, Plaintiff references the female officer that returned Plaintiff's Karrah to him in a damaged state. Id. In addition, Plaintiff's declaration in opposition to Defendants' motion for partial summary judgment alleges that Defendant Stewart came to Plaintiff's cell on July 10, 2005, but does not allege that Defendnat Stewart, or any other DOCS personnel, damaged Plaintiff's Karrah on that day. Pl.'s Decl. In Opp., ¶¶42-44. Plaintiff again asserts that on July 11, 2005, an unnamed female officer brought Plaintiff his Karrah, and at that point, it was bent. Pl.'s Decl. In Opp., ¶45.[4] There is no evidence in the record, aside from Plaintiff's completely conclusory and unsupported allegations, to support Plaintiff's assertions that Defendant Stewart damaged Plaintiff's Karrah in July of 2005. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim against Defendant Stewart for damaging Plaintiff's Karrah in July of 2005 should be dismissed.

## CONCLUSION

---

[4]While there is a grievance dated sometime in August referencing Plaintiff's Karrah being returned to him damaged, as previously discussed, any claims for damage to Plaintiff's Karrah occurring in August were not pled in Plaintiff's complaint and will not be considered by this Court.

For the aforementioned reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants' Motion for Partial Summary Judgment and Supplemental Motion for Summary Judgment should be granted in their entirety, and that Plaintiff's corresponding claims should be dismissed with prejudice.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b)(2), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of seventeen (17) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: March 9, 2010
White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

    The Honorable Stephen C. Robinson, U.S.D.J.

    Counsel of Record for Plaintiff and Defendant